# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE FULTZ, | ) | CASE NO. 5:21-cv-43 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DOMINIC P. ZIRPOLA, JR. et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of plaintiff Christine Fultz ("Fultz" or "plaintiff") for default judgment against defendants Dominic P. Zirpola, Jr., Chat Media Solutions LLC, Eastern Asset Services LLC, Eastern Asset Solutions LLC, JDS Recovery LLC, Atlantis Acquisitions & Logistics LLC, and EAS & Affiliates FL LLC (collectively, "defendants"). (Doc. No. 16.) The motion is unopposed. For the reasons set forth herein, the motion is **granted**.

## I.     Background

At some point in the past, Fultz had a "Community One Credit Union" account, which she used to purchase household items and to pay everyday living expenses. (Doc. No. 1, Complaint ¶¶ 52–53; *see id*. ¶ 77.) Fultz eventually defaulted on this account, due to severe financial distress. (*Id*. ¶¶ 54–55.) Beginning in October of 2020, and continuing for about three months, an organization identifying itself as "EAS" made telephone calls to Fultz, attempting to collect this debt. (Doc. No. 16-2, Declaration of Christine Fultz ¶¶ 3–4.)

The complaint identifies five telephone voicemails left by EAS on Fultz's cell phone: one each on October 12, 2020; October 13, 2020;[1] October 23, 2020;[2] October 27, 2020;[3] and November 9, 2020,[4] several of which allegedly used a pre-recorded voice. (Doc. No. 1 ¶¶ 61–68; 73–74.)[5] These voicemails generally indicated that the caller was attempting to follow up on a "claim" that required Fultz's "immediate attention," and that it was "imperative" that Fultz speak

---

[1] The following voicemail message was left on both October 12 and October 13, 2020:

> Hello, this is David Goldberg calling from EAS. A claim associated with you has been forwarded over to my office for review. Our representatives are here to assist you. You can contact us directly at 904-688-1836. That's 904-688-1836. We look forward to your call. Thank you.

(Doc. No. 1 ¶¶ 61–62.)

[2] On October 23, 2020, the following voicemail message was left:

> Hi, my name is Bethany, I am with the office of EAS. I'm in the "mediation department." I am trying to get in contact with a [sic] individual by the name of Christine Fultz. Christine, I received a case file with my office that does require your immediate attention. It is imperative that we speak. I can be reached at 844-386-7441. My extension is 409. Again, my number is 844-386-7441, extension 409. You understand that failure to contact my office does require this Complaint filed to be documented as a "failure to comply." My contact number again, that's at 844-386-7441, extension 409. I need to speak with you on that immediately.

(Doc. No. 1 ¶ 64.)

[3] On October 27, 2020, the following voicemail message was left:

> Hi, my name is Bethany, I'm here with the office of EAS. I'm in the "mediation department." I'm trying to get in contact with a Christine Fultz. Christine, I received a complaint file here in my office that does require your immediate attention. It is imperative that we speak. I can be reached at 844-386-7441. My extension is 409. This is my second and my final attempt to get in contact with you concerning Complaint No. 2020-53826. It is imperative that you make contact with my office. Do understand that failure to contact me does require this case to be documented as a "failure to comply." Christine Fultz, date of birth of February 1, 19XX, Social ending in XXX, I need to speak with you immediately. Thank you, bye bye for now.

(Doc. No. 1 ¶ 65.)

[4] On November 9, 2020, the following voicemail message was left:

> Hello, this is David Goldberg calling from EAS. Our office has made a few attempts to reach you recently regarding your account placed with our office. By calling within the next 48 hours, you will qualify for additional incentives to help you resolve this matter. Our representatives are here to assist you. You can reach our office direct, 904-688-1836. That's 904-688-1836. Thank you.

(Doc. No. 1 ¶ 73.)

[5] In her declaration accompanying the motion, Fultz documents *nine* calls, with screenshots of the voicemails left by the debt collector on each occasion. (*See*, Doc. No. 16-2 ¶ 6; Doc. No. 16-3.) These screenshots are consistent with the voicemails quoted in the above footnotes.

with an EAS representative or risk having her file "documented as a 'failure to comply.'" (*Id*. ¶¶ 61; 64; 65.)

In another call on November 6, 2020, EAS spoke with Fultz's husband and suggested that it was pursuing "pending charges" regarding a "fraud complaint" against Fultz, that it had an "affidavit of malicious intent" against her, that it would garnish her wages in the amount of $8,137.29, and that the interest on her defaulted account was 600%. (*Id*. ¶¶ 69–72.)

Finally, on December 2, 2020, EAS left a voicemail on Fultz's work phone despite "knowing that it would be inconvenient, embarrassing, and impermissible for [Fultz] to be contacted at work." (*Id*. ¶ 75.)[6]

Fultz filed this action on January 7, 2021, asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq*. ("OCSPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

Each of the defendants[7] was served with a summons and the complaint: Zirpola and JDS Recovery LLC on May 3, 2021 (Doc. Nos. 10 and 11, respectively); Chat Media Solutions LLC, Eastern Asset Services LLC, Eastern Asset Solutions LLC, EAS & Affiliates FL LLC on March 3, 2021 (Doc. Nos. 6, 7, 13, and 8, respectively); and Atlantis Acquisitions & Logistics LLC on March 16, 2021 (Doc. No. 5).

---

[6] In her declaration, Fultz states that debt collectors "would contact and threaten [her] family members or others— notably [her] father and [her] supervisor at work[] . . . as often as six times per week during some points during the three-month harassment period." (Doc. No. 16-2 ¶ 8.)

[7] There are ten "John Doe" defendants who have never been identified or served. Plaintiff's motion asks the Court to dismiss all of them without prejudice. (Doc. No. 16 at 1 (All page references herein are to the consecutive page numbers applied to each document by the Court's electronic filing system.).) That request is granted.

The complaint alleges that the defendant companies are "mere shells," and that, together with defendant Zirpola, they "operate in fact as a single consumer debt collection company calling itself 'EAS[,]'" with each defendant being the "alter ego" of the others. (Doc. No. 1 ¶¶ 2–3; 60.) Zirpola operates each of the six corporate defendants. (*Id.* ¶¶ 17a–f; 21a–f; 59.) They all share private mailbox numbers and addresses (*id.* ¶¶ 33–44), share employees and operate out of the same building (*id.* ¶ 59), and fail to follow corporate formalities or maintain separate bank accounts (*id.*).

No defendant filed a responsive pleading and default was noted by the clerk against each of the seven defendants on June 3, 2021. (Doc. No. 14.)

## II. Discussion

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The party seeking relief must then apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

"Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the [c]omplaint . . . ." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006); *see also Pope v. United States*, 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3 (1944) (where facts are stipulated or where the defendant is in default, "the court determines that the unchallenged facts shown of record establish a legally binding obligation; it adjudicates the plaintiff's right of recovery and the extent of it, both of which are essential elements of the judgment."). While the factual allegations in the complaint that relate to liability are taken as true, the court "is required to 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Gilden v. Platinum Holdings Grp., LLC*, No. 1:18-cv-343, 2019 WL

4

590745, at *2 (S.D. Ohio Feb. 13, 2019) (quoting *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 WL 2572713, at *4 (E.D. Mich. June 23, 2010)).

After the clerk entered the defaults, Fultz filed the instant motion for default judgment on August 2, 2021. She seeks judgment against the seven defaulting defendants, jointly and severally, as follows: $29,248, including $1,000 in statutory damages under the FDCPA; $15,000 in noneconomic damages under the FDCPA; $6,000 in trebled statutory damages under the TCPA; $1,200 in statutory damages under the OCSPA; $5,076 in attorney fees; $402 in court costs; and $570 in costs.

No defendant filed any opposition to plaintiff's motion and the time for doing so has expired, with no extension having been sought or granted. *See* Local Rule 7.1(d) (setting deadline for filing memorandum in opposition).

### Count I: Violation of FDCPA

"In order to establish a claim under the FDCPA, the following elements must be present: (1) plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must arise out of transactions that are 'primarily for personal, family or household purposes'; (3) defendant is a 'debt collector' as defined by the FDCPA; and (4) defendant must have violated one of the specific statutory prohibitions regarding debt collection communication and/or activity." *Wallace v. Manley Deas Kochalski LLC*, No. 3:13-cv-31, 2013 WL 3338687, at *2 (W.D. Ky. July 2, 2013). The factual allegations in Fultz's complaint, set forth above and taken as true due to defendants' defaults, establish all the elements of a claim under the FDCPA.

A prevailing FDCPA plaintiff may recover (1) actual damages, (2) statutory damages not exceeding $1,000, and (3) reasonable attorney's fees and costs. 15 U.S.C. § 1692k(a). In determining an appropriate amount of statutory damages, the Court must consider the frequency

and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which the noncompliance was intentional. 15 U.S.C. § 1692k(b)(1).

Fultz claims she is entitled to recover $1,000 in statutory damages, $15,000 in actual noneconomic damages, $5,076 in attorney's fees, $402 in costs, and $570 in expenses.

### FDCPA Damages

As outlined above, defendants violations here were numerous, egregious, and intentional, thus meriting an award of $1,000 in statutory damages. *See, e.g.*, *Poskovic v. D2 Mgmt., LLC*, No. 5:19-cv-1222, 2019 WL 6727098, at *1 (N.D. Ohio Dec. 11, 2019) (awarding the full $1,000).

The FDCPA does not define "actual damages," but "it is commonly accepted that a prevailing plaintiff may recover for emotional distress damages[,]" without having to satisfy the state law elements of emotional distress. *Harding v. Check Processing, LLC*, No. 5:10-cv-2359, 2011 WL 1097642, at *2 (N.D. Ohio Mar. 22, 2011). Taking as true the allegations in the complaint, and further considering Fultz's declaration accompanying her motion,[8] the Court

---

[8] In her declaration, Fultz states:

> 9.      Throughout the process, I experienced increased stress, anxiety, nausea, humiliation, embarrassment, annoyance, aggravation, frustration, difficulty focusing at work, and worry.
>
> 10.      I was emotionally distressed not only because the collectors were threatening me, but also because they were contacting my family and others.
>
> 11.      I was a nervous wreck, particularly when receiving these phone calls, and I always felt the need to look over my shoulder in fear of someone coming to get me.
>
> 12.      I experienced emotional distress every day of the week for a period of about four months—three months while the harassing conduct was taking place, and then for about a month afterward.
>
> 13.      During this four-month period, I also experienced physical distress on a daily basis in the form of weight gain and low energy, which I attribute to the stress of EAS's harassment.
>
> 14.      Under so much stress, I would get sick multiple times per week at work. I also eventually ended up transferring locations and supervisors to attempt to avoid any more embarrassment and fear.
>
> 15.      This led me to having fewer hours per week of paid work, putting me under a lot of financial stress to pay bills and support my family.

(Doc. No. 16-2 ¶¶ 9–15.)

concludes that an award of $15,000 in actual noneconomic damages is warranted. *See, e.g.*, *Grimm v. GPG Processing, LLC*, No. 2:18-cv-1522, 2019 WL 4508921, at *3 (S.D. Ohio Sept. 19, 2019) (awarding $15,000 on FDCPA emotional distress claim documented in an accompanying affidavit), *report and recommendation adopted by* 2019 WL 4958073 (S.D. Ohio Oct. 8, 2019).

<u>FDCPA Attorney's Fees and Costs</u>

The FDCPA permits an award of attorney's fees that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Grier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Generally, under fee-shifting statutes such as the FDCPA, work done by paralegals and others may also be compensated, so long as the work performed is sufficiently complex or is work traditionally performed by attorneys. *Snyder v. Comm'r of Soc. Sec.*, No. 1:06-cv-2737, 2011 WL 66458, at *2 (N.D. Ohio Jan. 10, 2011) (quotation marks and citation omitted). That practice encourages the use of lower-billing professionals and paraprofessionals, thus "achieving the same results at a [lower] overall cost." *Id.* (citations omitted).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (the "lodestar" method). A court "must indulge a strong presumption that the lodestar represents a reasonable fee." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (quotation marks and citations omitted).

> "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). A useful guideline in determining a reasonable hourly rate is the "prevailing market rate [ ] in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), defined as "that rate which

7

> lawyers of comparable skill and experience can reasonably expect to command,"
> *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "The
> appropriate rate . . . is not necessarily the exact value sought by a particular firm,
> but is rather the market rate . . . ." *Gonter [v. Hunt Valve Co.]*, 510 F.3d at 618; *see
> also Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995) ("Paying counsel in
> FDCPA cases at rates lower than those they can obtain in the marketplace is
> inconsistent with the congressional desire to enforce the FDCPA through private
> actions, and therefore misapplies the law.").

*Id*. at 447.

Along with her motion for default judgment, Fultz submitted the declaration of her attorney Jonathan Hilton (*see* Doc. No. 16-1), wherein Mr. Hilton outlines his own professional credentials as well as those of others whose work is included in the request for fees. In addition, Fultz submitted an itemization of the work for which fees are sought (*see* Doc. No. 16-5), as well as invoices for various costs associated with the litigation (*see* Doc. No. 16-6).

In all, Fultz seeks to recover attorney's fees as follows: for attorney Jonathan Hilton ("JH")—14.6 hours at $285/hour, plus 0.4 hours at $50/hour (total: $4,181); for paralegal Rachel Clark ("RC")—1.1 hours at $50/hour (total: $55); for Cameron Moore ("CM"), a rising 2L law student at Michigan State University College of Law—5.5 hours at $130/hour (total: $715); and for Christopher Shen ("CS"),[9] "a high school intern of unusual skill . . . whose time would normally be billed to paying clients[,]" (Doc. No. 16 at 12)—2.5 hours at $50/hour (total: $125). The grand total of attorney's fees sought is $5,076.00.

Attorney's fees are generally based on the prevailing market rates in the relevant community. *Mohn v. Goll*, No. 4:15-cv-476, 2016 WL 1258578, at *1 (N.D. Ohio Mar. 31, 2016).

---

[9] The resume of Mr. Shen is also included. Mr. Shen is a high school student with an expected graduation date of June 2022. (*See* Doc. No. 16-4 at 2.) Although acknowledging that it is unusual to seek an award for Mr. Shen's work, Mr. Hilton represents that Mr. Shen's time "is significantly more valuable to the firm than that of the average first-year lawyer." (Doc. No. 16 at 12.) Given Mr. Shen's fairly impressive resume, there is no reason to doubt Mr. Hilton's assessment of Mr. Shen's contribution to this litigation.

Fultz has not supplied evidence of any such rates, but based on this Court's knowledge of attorney's fees in civil litigation in the Northeast Ohio area, as well as fee awards in similar cases, the Court finds that each of these billing rates is reasonable and consistent with prevailing market rates.

Fultz also seeks to recover litigation costs and expenses in the amount of $972, covering the filing fee ($402), fees for service of process ($420), and a skip trace for Zirpola ($150). All of these costs are recoverable under the FDCPA. *See Searcy v. GUUAS, LLC*, No. 2:19-cv-3124, 2020 WL 9849810, at *4 (S.D. Ohio Nov. 18, 2020) (collecting cases).

*FDCPA Award Summary*

Accordingly, for defendants' violation of the FDCPA, the Court awards: $1,000 in statutory damages; $15,000 in actual noneconomic damages; $5,076 in attorney's fees; and $972 in costs and expenses, for a total FDCPA award of $22,048.

**Count III: Violation of TCPA**

The TCPA makes it unlawful, with narrow exceptions not applicable here, "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(B). A person establishing a violation may recover $500 in statutory damages for each violation and, if the defendant willfully or knowingly violated the statute, a court may, in its discretion, treble the statutory damages. 47 U.S.C. § 227(b)(3)(B)–(C).

Here, Fultz claims that, of the various voicemails that she has been able to document, four made by one "David Goldberg" have "the metallic, robotlike voice that would indicate a pre-recorded voice message." (Doc. No. 16 at 8.) Plaintiff seeks $500 in statutory damages for each of the following calls: October 12, 2020; October 13, 2020; October 26, 2020 (first call only); and

November 9, 2020 (*see* Doc. No. 16-3 at 2, 3, 4, 9, respectively)—for a total of $2,000. Plaintiff's unopposed assertion that these calls were "pre-recorded" and, therefore, prohibited by the TCPA (Doc. No. 1 ¶ 93) is taken as true.

Fultz also argues that this amount should be trebled because defendants' conduct was knowing and willful. (*Id*. ¶ 94; Doc. No. 16 at 8.) This assertion is unopposed by any defendant.

For the reasons stated, Fultz is awarded $2,000 in statutory damages, trebled, for a total of $6,000, for the TCPA violation.

### Count II: Violation of OCSPA[10]

Like the FDCPA, "the OCSPA also provides protections for consumer debtors against debt collectors and their attorneys." *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 580 (Ohio 2016). The purpose of the OCSPA "is to prohibit both unfair and deceptive acts and . . . any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice" in violation of the OCSPA. *Kelly v. Montgomery Lynch & Assoc., Inc.*, No. 1:07-cv-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) (quoted by *Taylor*, 72 N.E.3d at 598–99).

A person establishing a violation of the OCSPA may recover "three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater . . . ." Ohio Rev. Code § 1345.09(B). The statutory damages of $200 are assessed per violation, provided each violation causes a "separate and distinct harm[.]" *Gilden*, *supra*, 2019 WL 590745, at *3 (awarding $600 for three separate harms involving false representation of debt collector's identity and two distinct types of threats) (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 452 (6th Cir. 2011)).

---

[10] The Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.

In this case, Fultz identifies six separate harms arising from defendants' conduct:

- communicating with plaintiff while she was at work, with the harm being plaintiff's decreased ability to perform her job (Doc. No. 1 ¶ 80a);

- threatening plaintiff with criminal prosecution and wage garnishments, with the harm being that plaintiff was anxious ([*id.*] ¶ 80b; ¶ 80i);

- falsely leading plaintiff to believe she was dealing with "attorneys" and "mediators," with the harm being that plaintiff did not know she was dealing with a run-of-the-mill debt collection agency ([*id.*] ¶ 80e);

- failing to properly identify itself on all calls, with the harm being that plaintiff did not specifically know which of the various corporate shells was contacting her ([*id.*] ¶ 80c; ¶ 80h);

- inflating the amount of plaintiff's debt ([*id.*] ¶ 80d; ¶ 80i); and

- failing to give plaintiff the warnings, notices, and disclosures required by the FDCPA, so that plaintiff was not fully informed of her rights ([*id.*] ¶ 80g; ¶ 80j).

(Doc. No. 16 at 9, capitalization omitted.) Fultz seeks a total award of $1,200 for these six (6) OCSPA violations.

The Court agrees that Fultz is entitled to recover $200 for each of the six (6) separate harms caused by defendants to Fultz—for a total of $1,200.

## III.    Conclusion

For the reasons set forth herein, plaintiff Fultz's motion for default judgment is granted, jointly and severally, against the named defendants (the John Doe defendants being dismissed without prejudice) in the total amount of $29,248 as follows:

- for defendants' violation of the FDCPA: $1,000 in statutory damages; $15,000 in actual noneconomic damages; $5,076 in attorney's fees; and $972 in costs and expenses, for a total FDCPA award of $22,048;

- for defendants' violation of the TCPA: $2,000 in statutory damages, trebled, for a total TCPA award of $6,000; and

11

- for defendants' violation of the OCSPA: $200 for each of the six (6) separate harms caused by defendants, for a total OCSPA award of $1,200.

A separate judgment entry will issue. This case is closed.


**IT IS SO ORDERED**.



Dated: October 26, 2021

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**